# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARLENE MARSHALL-LEE** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 18-2333 |
| v. | : | |
| | : | |
| **U.S. DEPARTMENT OF VETERANS AFFAIRS** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    OCTOBER 25, 2018

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Darlene Marshall-Lee ("Plaintiff") brings this action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§1346(b), 2671-2680, against the United States Department of Veterans Affairs (the "VA"), seeking to hold the VA liable for injuries she allegedly sustained when an elevator door at the Philadelphia VA Medical Center (the "VAMC") unexpectedly closed on her. [ECF 1]. Before this Court is a *motion to dismiss* filed by the United States of America, on behalf of the VA, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), for lack of subject matter jurisdiction. [ECF 4].[1] Plaintiff, who is represented by counsel, has failed to file any kind of response or opposition, though the time for doing so has

---

[1] It is well-settled that the only proper defendant for claims brought under the FTCA is the United States; not a federal agency sued in its own name or individual federal employees sued in their official capacities. *See Bailey v. U.S. Marshals Serv. Headquarters*, 426 F. App'x 44, 45-46 (3d Cir. 2011) ("It is well established that the United States is the only proper defendant in an action brought under the FTCA."); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."). In light of this well-settled law, and in order to properly consider the present motion to dismiss, this Court will dismiss the United States Department of Veterans Affairs from this action and, in turn, substitute the United States of America in its place as the proper Defendant with respect to Plaintiff's FTCA claims. Accordingly, the Court will refer to the United States of America as "Defendant" on Plaintiff's FTCA claims throughout the remainder of this Opinion.

passed. The motion to dismiss is ripe for disposition. For the reasons set forth, the motion is granted, and this matter is dismissed for lack of subject matter jurisdiction.

**BACKGROUND**

On June 4, 2018, Plaintiff filed a personal injury complaint seeking monetary damages against Defendant, premised on injuries she allegedly suffered when an elevator door located in the Philadelphia VAMC closed on her. [ECF 1]. Succinctly, Plaintiff alleges that:

> On June 2, 2015, Plaintiff was accompanying her husband to an appointment at the VAMC when she went to board an elevator within the facility. (Compl. ¶¶1, 5). As Plaintiff entered the elevator, the doors closed on her and did not retract upon making contact with her. (*Id*. at ¶5). Plaintiff was pinned between the doors until she was able to force her way out. (*Id*. at ¶6). Plaintiff alleges that the VA, as the owner and/or operator of the VAMC, was responsible for the inspection, maintenance, and repair of the elevators therein. (*Id*. at ¶9).

As noted, Defendant has filed the instant motion to dismiss pursuant to Rule 12(b)(1) arguing that this Court lacks subject matter jurisdiction over this matter because the matter falls within the independent-contractor exception to the waiver of sovereign immunity provided by the FTCA. In support of its motion, Defendant has submitted the declaration of Benjamin A. Grogg (the "Grogg Declaration"), an Acting Director of Contracting for the VA, who verified the existence of two service contracts pertaining to the inspection, maintenance, service, and repair of the elevators at the VAMC. (Grogg Decl., ECF 4-1). The two identified service contracts, the ThyssenKrupp Contract and the Bayline Contract, were attached to the Grogg Declaration as Exhibits 1-A and 1-B, respectively, and were effective during the relevant time period.

According to the Grogg Declaration, under the ThyssenKrupp Contract, the VA did not control either the day-to-day activities of the employees of ThyssenKrupp or their performance of the contract, and ThyssenKrupp was an independent-contractor responsible for the day-to-day

inspection, maintenance, and repair of the VAMC's elevators. (Grogg Decl. at ¶7). Under the express terms of the ThyssenKrupp Contract, ThyssenKrupp was required to do, *inter alia*, the following:

- Furnish full preventative maintenance services, unscheduled repair services, and emergency services on all passenger service elevators located at the VAMC. (Ex. 1-A at 4).
- Perform all inspections, safety tests, and other tests, of the VAMC elevators as recommended by the American Society of Mechanical Engineers ("ASME"). (Ex. 1-A at 4-5).
- Maintain performance levels, at all times, including the "opening and closing times [and] door close torques . . . with a minimum of stand open time consistent with traffic demands at each floor," and "ensure all electric eyes or door detectors are working at all times." (Ex. 1-A at 5); and
- Maintain the efficiency, safety and speeds of the elevators as specified in the contract or designated by the manufacturer, at all times, including door opening and closing. (Ex. 1-A at 12).

In addition, ThyssenKrupp was required to:

- Furnish all material, labor, supervision, tools, travel, and equipment necessary to provide full maintenance services, including all adjustments, tests, parts replacement and repairs necessary to keep the elevators in continuous use at their initial performance ability. (Ex. 1-A at 4);
- Furnish all parts, materials, labor, and transportation necessary and incidental to provide full preventative maintenance and repair services of the VAMC elevators in accordance with the terms of the contract. (Ex. 1-A at 17);
- Furnish all labor and supplies, parts, and materials necessary to regularly and systematically clean, examine, adjust, lubricate as required, and if conditions warrant, repair or replace "Automatic power operated door operated door operator, car door hanger, car door contact, [and] door protective devices." (Ex. 1-A at 5-6); and
- Provide qualified mechanics on-site at the VAMC, to find and correct any deficiencies, in addition to any repair work on the elevators. (Ex. 1-A at 12).

As to the day-to-day activities of the employees of ThyssenKrupp or their performance of the contract, ThyssenKrupp was required to:

- Supervise its own employees and the contract work. (Ex. 1-A at 4, 14, 16);
- Require all ThyssenKrupp employees, including supervisors, to wear distinctive uniform clothing for ready identification, with the contractor's name easily identifiable, affixed permanently, such as a badge or monogram. (Ex. 1-A at 13);
- Maintain the safety of patients, employees, visitors, and contractor personnel at all times. (Ex. 1-A at 13);

3

- Take all reasonable precautions necessary to protect persons and property from injury or damage during its performance of the contract. (Ex. 1-A at 23);
- Be responsible for any injury to itself, its employees, and any damage to personal or public property that occurred during the performance of the contract caused by its employees' fault or negligence. (Ex. 1-A at 23); and
- Maintain personal liability and property damage insurance having coverage up to the limits required by Pennsylvania law. (Ex. 1-A at 23).

The second contract referenced in and attached to the Grogg Declaration was the service contract between the VA and Bayline Lift Technologies, LLC ("Bayline") (the "Bayline Contract"). (Grogg Decl. at 11-12). According to the Grogg Declaration, under the Bayline Contract, the VA also did not control the day-to-day activities of Bayline's employees in their performance of the Bayline Contract, and Bayline was an independent contractor responsible for inspecting the annual and other testing of the VAMC's elevators. (*Id*. at 13). The Bayline Contract expressly provided that Bayline was required to:

- Provide all inspection, engineering, management, supervision, manpower, materials, supplies, and equipment, and plan, schedule, coordinate, and assure effective performance of all inspection services for the elevators at the VAMC. (Ex. 1-B at 5); and
- Inspect all required safety tests and other tests of the VAMC elevators conducted by the elevator maintenance contractor [ThyssenKrupp] in accordance with the latest ASME safety codes, including but not limited to annual and five-year tests. (Ex. 1-B at 5).

Like with ThyssenKrupp, as to the day-to-day activities of Bayline's employees or their performance of the contract, (Grogg Decl. at 13), Bayline was required to:

- Manage and supervise its own employees and the contract work. (Ex. 1-B at 5, 9);
- Provide qualified inspectors with current ASME-Qualified Elevator Inspector certifications. (Ex. 1-B at 6);
- Ensure that its employees maintained satisfactory standards of competency, conduct, appearance, and integrity, and wore badges identifying themselves as contractor personnel. (Ex. 1-B at 7);
- Take all reasonable precautions necessary to protect persons and property from injury or damage during its performance of the contract. (Ex. 1-B at 25-26);
- Be responsible for any injury to itself, its employees, and any damage to personal or public property that occurred during the performance of the contract caused by its employees' fault or negligence. (Ex. 1-B at 7, 25-26); and
- Maintain personal liability and property damage insurance having coverage up to the limits required by Pennsylvania law. (Ex. 1-B at 6-7, 25-26).

4

**LEGAL STANDARD**

A Rule 12(b)(1) motion to dismiss challenges the existence of subject matter jurisdiction. As the party invoking this Court's jurisdiction, Plaintiff bears the burden of proving that the requisite jurisdictional requirements are met. *Development Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). "[W]hen there is a fact question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings . . . '[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case.'" *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Therefore, this Court is free to consider evidence outside the pleadings to resolve factual issues bearing on the jurisdictional issue. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). As mentioned, Plaintiff has not responded to Defendant's motion and, thus, has made no attempt beyond the allegations in her complaint to meet her burden with respect to subject matter jurisdiction.

**DISCUSSION**

As noted, Defendant argues that this Court lacks subject matter jurisdiction over this matter under the FTCA. The issue raised by Defendant's motion is whether this matter falls within the FTCA's waiver of sovereign immunity or is subject to one of its exceptions. Generally, the United States is immune from suit for monetary damages. *Sconiers v. United States*, 896 F.3d 595, 597 (3d Cir. 2018). The FTCA, however, provides a limited waiver of the United States' sovereign immunity allowing tort suits under specified circumstances. *Id*. Specifically, §2674 provides that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same

> extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. §2674. The scope of this waiver must be strictly construed in favor of the sovereign. *Orff v. United States*, 545 U.S. 596, 601-02 (2005); *Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009). This waiver of immunity is also subject to several exceptions; where an exception applies, sovereign immunity remains a jurisdictional bar to suit. *See Dolan v. United States Postal Serv.*, 546 U.S. 481, 485 (2006); *United States v. Orleans*, 425 U.S. 807, 813-14 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("[T]he terms of the [United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

Interpreting various provisions of the FTCA, the United States Court of Appeals for the Third Circuit ("Third Circuit") has concluded that one such exception to the waiver of sovereign immunity is the so-called "independent-contractor exception." *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997) (holding "there is an independent-contractor exemption in the Federal Tort Claims Act."). In reaching this conclusion and finding such an exception, the Third Circuit relied primarily on §1346(b), which provides, in relevant part, that district courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any ***employee of the Government*** while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b) (emphasis added); *see also Norman*, 111 F.3d at 357. The FTCA defines "employee of the Government" to include "officers and employees of any federal agency." 28 U.S.C. §2671. Based on these two provisions of the FTCA, the Third Circuit has concluded that "the United States is not liable for injuries caused by the negligence of its independent contractor[s.]"

6

*Jackson v. Liberty Mut. Ins. Co.*, 282 F. App'x 150, 151 (3d Cir. 2008) (citing *Norman*, 111 F.3d at 357); *see also Moreno v. United States*, 387 F. App'x 159, 160 (3d Cir. 2010) (holding that "suits against independent contractors are not viable" under the FTCA).

In determining whether a party is a federal employee or an independent contractor, the "critical factor used . . . is whether the government has the power 'to control the detailed physical performance of the contractor.'" *Norman,* 111 F.3d at 357 (citing *Orleans,* 425 U.S. at 814); *see also Logue v. United States*, 412 U.S. 521, 528 (1973); *Gibson v. United States*, 567 F.2d 1237, 1242 (3d Cir. 1977). "'[T]he question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government.'" *Norman,* 111 F.3d at 357 (citing *Orleans,* 425 U.S. at 815). A court may properly consider whether the independent-contractor exception to the FTCA is applicable on a motion to dismiss pursuant to Rule 12(b)(1) because the motion raises jurisdictional issues. *See id.* (affirming judgment analyzing motion for relief under FTCA due to tortfeasor's independent contractor status under Rule 12(b)(1)); *Pace v. United States,* 2008 WL 4559598, at *2 (D.N.J. Oct. 9, 2008) (addressing the United States' motion under Rule 12(b)(1) rather than under Rule 56 where the government argued that a cleaning service was an independent contractor responsible for negligence which led to plaintiffs' injuries).

Here, in her complaint, Plaintiff asserts that Defendant was negligent and, therefore, liable for her injuries because Defendant was "responsible for the inspection, maintenance, and repair" of the VAMC's elevators. (Comp. at ¶9). Nowhere, however, does Plaintiff allege that Defendant in any way controlled the day-to-day activities of either of the two entities that were specifically contracted to inspect, maintain, service, and repair the elevators. Further, Plaintiff

made no specific allegation that an employee or agent of the United States caused her injury, compelling the inference that her claims are predicated on the action and/or omission of the two private entities responsible for the inspection, maintenance, servicing, and repair of the elevators at the time Plaintiff was injured.  By not responding to the Rule 12(b)(1) motion to dismiss, Plaintiff has failed to refute any of Defendant's supporting evidence and, thereby, failed to meet her burden of demonstrating the existence of subject matter jurisdiction.

Defendant's unrefuted evidence, on the other hand, demonstrates that when Plaintiff's alleged injuries occurred, Defendant had previously contracted out the day-to-day inspection, maintenance, and repair responsibilities for the elevators to two different independent outside entities:  ThyssenKrupp and Bayline.  The two service contracts expressly provide that ThyssenKrup and Bayline, not Defendant, were responsible for:  furnishing full preventative maintenance, inspection, repair, and emergency services on all VAMC passenger elevators.  (1-A at 4-5, 12; 1-B at 5).  These entities were also responsible for providing all parts, materials, labor, supervision, tools, and equipment necessary for the elevator services provided and for providing qualified mechanics on-site.  (1-A at 4-6, 12, 17; 1-B at 5-7, 9).

It is unfortunate that Plaintiff suffered injuries.  However, in light of the uncontroverted evidence presented by Defendant, it was ThyssenKrup and Bayline, not the United States or the VA, who had the responsibility and authority to control the detailed physical performance of their respective service contracts with Defendant.  Indeed, the very purpose for these service contracts was to turn over the inspection, maintenance, service, and repair responsibilities of the elevators to the two private independent entities.  The VA delegated the responsibility for inspecting, maintaining, and servicing the elevators under these contracts as demonstrated by the extensive duties and responsibilities assumed by the private entities in their respective contracts.

Applying the above-cited principles to the case *sub judice,* this Court finds that Defendant's uncontroverted evidence demonstrates that responsibility for the inspection, maintenance, and repair of the elevators at the VAMC belonged exclusively with ThyssenKrupp and Bayline, entities retained by Defendant as independent contractors for these specific services. Therefore, the independent-contractor exception to the FTCA bars Plaintiff from maintaining a claim against the United States based on the alleged negligence of either or both entities solely responsible for the maintenance, service, and repair of the elevators. This conclusion is consistent with other courts' analysis of similar claims asserted under the FTCA stemming from elevator injuries and which apply the independent-contractor exception. *See, e.g., Dingler v. United States*, 2008 WL 4065642 (D. Vt. Aug. 26, 2008) (granting government's motion to dismiss for lack of subject matter jurisdiction based on application of independent-contractor exception); *Robbins v. Computer Sciences Corp.*, 486 F. Supp. 2d 581, 586 (S.D. Miss. 2007) (same); *Diaz v. United States*, 372 F. Supp. 2d 676 (D.P.R. 2005) (same); *Hostetler v. United States*, 97 F. Supp. 2d 691 (E.D. Va. 2000) (same); *Talkington v. General Elevator Company, Inc.*, 967 F. Supp. 890 (N.D.W. Va.. 1997) (same).

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet her burden of establishing this Court's jurisdiction over this matter under the FTCA and that the independent-contractor exception applies. Consequently, because the United States has not waived its sovereign immunity, Defendant's motion to dismiss is granted, and this matter is dismissed for lack of subject matter jurisdiction. An order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.